# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| THOMAS P. JACQUES,<br><br>Plaintiff,<br><br>vs.<br><br>HAAS GROUP<br>INTERNATIONAL, INC.,<br><br>Defendant. | CV 14-135-BLG-SPW-CSO<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE** |

Plaintiff Thomas P. Jacques ("Jacques") filed this action against his former employer, Defendant Haas Group International, Inc. ("Haas"), for wrongful discharge, back commission payments owed, and breach of the implied covenant of good faith and fair dealing. *Am. Cmplt. (ECF No. 27) at ¶¶ 39-57.*[1] Invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332, Jacques seeks compensatory and punitive damages. *Id. at ¶ 5 and Prayer for Relief at ¶¶ 1-4.*[2]

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

[2]Jacques also asserted other claims and named an additional defendant, but the Court dismissed those claims and the additional defendant in earlier proceedings. *See Order (ECF No. 39).*

In his Amended Complaint, Jacques asserts the following Counts:

I - Wage claim under MCA §§ 39-3-204(1) and 205, alleging that Haas failed to pay commissions it owes him, *ECF No. 27 at ¶¶ 39-41*;

II - Claim for breach of the implied covenant of good faith and fair dealing, alleging Haas failed to disclose sales upon which Jacques was owed commissions, cut back on staff but required higher sales and performance, and gave Jacques a poor performance evaluation, *id. at ¶¶ 42-46*;

III - Claim for wrongful discharge under Montana's Wrongful Discharge from Employment Act ("WDEA"), MCA § 39-2-904(1)(b),[3] alleging that Haas fired him without good cause, *id. at ¶¶ 47-50*;

IV - Claim for wrongful discharge under the WDEA, MCA § 39-2-904(1)(a), alleging that Haas fired him in retaliation for filing a wage claim, *id. at ¶¶ 51-54*; and

V - Claim for unjust enrichment alleging that Haas will be unjustly enriched at Jacques' expense if Haas is permitted to retain commissions on sales generated by Jacques' efforts, *id. at ¶¶ 55-57*.

Now pending is Haas' motion for summary judgment on all of Jacques' claims against it. *Haas' Mtn. for Summary Judgment (ECF No. 45)*. As discussed below, genuine issues of material fact exist respecting each claim. Thus, the undersigned recommends that the Court deny Haas' summary judgment motion and set this case for trial.

---

[3]Jacques' Amended Complaint cites MCA § 39-2-904(2), but context makes clear that Jacques intended to cite to MCA § 39-2-904(1).

# I.  __Background__[4]

Jacques and others owned MC Technologies, which marketed a system called MAXCOM.  *Stmt. of Stipulated Facts (ECF No. 7) at ¶ 7; Haas' Answer to Amended Cmplt. (ECF No. 28) at ¶ 7.*  In 2007, Haas acquired MC Technologies.  *ECF No. 7 at ¶ 7.*  Jacques and some of MC Technologies' other owners became Haas employees.  *Id.*

Jacques was tasked with marketing the MAXCOM system.  *ECF No. 28 at ¶ 9.*  Jacques describes MAXCOM as "offer[ing] employers a simple and cost-effective method for protecting employees who work with or around hazardous materials."  *ECF No. 27 at ¶ 7.*  Haas, which maintains that it integrated the staff and operations of MC Technologies into itself as a division, describes the resulting MAXCOM Services Division as "sell[ing] a particular service: an integrated software system for monitoring and facilitating customer reporting, handling, and use of various chemicals, as well as certain training and audit services."  *Defts' Prelim. Pretrial Stmt. (ECF No. 9) at 2.*

At the beginning of 2008, Haas employed sixteen people (one of whom was employed part-time), in its MAXCOM division.  *ECF No. 7*

---

[4]The background facts are undisputed unless otherwise noted.

*at ¶ 8.* Staffing in the MAXCOM division was reduced between 2008 and the present. *Id. at ¶ 9.*

Jacques worked from his home in Billings, Montana. He was usually supervised by managers at Haas' Pennsylvania headquarters, but for a time was supervised from Tucson, Arizona. Several different managers supervised Jacques between 2008 and 2014. *Id. at ¶ 10; ECF No. 28 at ¶ 12.*

Jacques' compensation package from Haas consisted of an annual salary, benefits, and commission payments. His annual salary at the time of his termination was $81,500. *ECF No. 7 at ¶ 11.*

In 2010 and 2011, Jacques' commission was 5% of sales of MAXCOM products and services up to $500,000, and 10% once sales exceeded $500,000. *ECF No. 28 at ¶ 14.* In 2012 and after, Jacques' commission was 5% of sales of MAXCOM products and services up to $500,000, 7.5% on such sales made above $500,000 up to $750,000, and 10% on such sales above $750,000. *Id. at ¶ 15.* Jacques maintains that these commission amounts were for "annual" sales. *ECF No. 27 at ¶ 14.* Haas maintains these commission amounts were for "new" sales. *ECF No. 28 at ¶ 14.*

Haas did not implement any new written commission policy applicable to Jacques prior to the end of his employment. *Id. at ¶ 16.*

Haas employee Paula Hearn was tasked with calculating Jacques' commissions. She provided copies of her calculations to her superiors, and payments to Jacques were based on her calculations. *ECF No. 7 at ¶ 12.*

In late 2012, Jacques negotiated a contract with Providence Health System ("PHS"), and his division was recognized for exceeding its sales quota for the year. *Id. at ¶ 13.*

The amount that Haas calculated was due to Jacques for sales in late 2012 was paid in 2013. *Id. at ¶14.* Haas paid commissions to Jacques between March 2013 and November 2013. *Id. at ¶ 15.* Haas paid no commissions to Jacques in December 2013 or January 2014. *Id. at ¶ 16.*

Jacques filed a wage claim with the State of Montana Department of Labor and Industry, and it was served on Haas in February 2014. *Id. at ¶ 17.* Haas gave Jacques a performance evaluation in February 2014. *Id. at ¶ 18.*

On August 26, 2014, Haas deposited in Jacques' bank account

$77,783.68, which was the net after taxes on commissions of $125,383.33. *Id. at ¶ 19.*

On August 28, 2014, Haas terminated Jacques' employment. *Id. at ¶ 20.*

On September 22, 2014, Haas paid Jacques $16,389.10, which was the net after taxes on commissions of $25,068.74. *Id. at ¶ 21.*

On October 10, 2014, Jacques filed this action. *ECF No. 1 at 1.*

## II.   The Parties' Arguments

Haas argues that there are no genuine issues of material fact and that it is entitled to summary judgment on all of Jacques' claims against it. *Haas' Brief in Support of Summary Judgment Mtn. (ECF No. 46) at 2-3, 5.* First, respecting Jacques' claim for back commission payments, Haas argues that there is no evidence that it failed to pay Jacques any amount that it actually owed him. *Id. at 6-9.* Rather, Haas argues that it paid Jacques $125,400.80 (before tax withholdings), and later, after recalculating the amount, paid him another $25,067.54 (before tax withholdings).[5]  These payments were for "all sales by

---

[5]The reason for the slight discrepancies between these numbers and the numbers in the Statement of Stipulated Facts is unclear to the Court.

Jacques through his termination of employment on which he was not previously paid commissions and includ[e] an amount equal to statutory penalties under Montana law." *Id. at 7.* Haas argues that Jacques can present no relevant evidence disputing these facts or supporting his allegation that there are other sales that he made for which he was not paid commissions. *Id. at 7-8.* Thus, Haas argues, it is entitled to summary judgment on Counts I, II, and V of Jacques' Amended Complaint. *Id. at 9.*

Second, respecting Jacques' claim for wrongful discharge based on lack of good cause, Haas argues that it had good cause to terminate Jacques' employment and that Jacques cannot show that Haas' reasons were pretexts. *Id. at 9-11.* Haas argues that it had good cause to terminate Jacques employment because: (1) he failed to follow instructions from his final three supervisors to focus his full time and attention to sales to new customers; (2) his performance fell below objectives and was deteriorating during 2013 and 2014, including his failure to meet revenue, contribution, and new customer sales targets; and (3) Jacques was not cooperating in efforts to improve sales or in improving his attitude. *Id. at 10-11.* Thus, Haas argues, it is entitled

to summary judgment on Counts III and IV of Jacques' Amended Complaint. *Id. at 11*. *See also Reply Br. (ECF No. 62)*.

Finally, Haas argues that it is entitled to summary judgment respecting Jacques' claim for punitive damages stemming from his WDEA retaliation claim. *Id. at 11-12*. Haas argues that Jacques cannot produce clear and convincing evidence that Haas discharged him in retaliation for filing a wage claim. It argues that Jacques' last supervisor, Matthew Young ("Young"), testified in his deposition that his bases for terminating Jacques' employment were focused on Jacques' value to the team and that he had no animus toward Jacques for filing the wage claim. *Id. at 12*. Thus, Haas argues, it is entitled to summary judgment on Jacques' claim for punitive damages. *Id.*

In response, Jacques argues that genuine issues of material fact preclude summary judgment. First, Jacques argues that, in asserting that there are no genuine issues of material fact, Haas has: (1) repeatedly failed to cite to its Statement of Uncontested Fact or to the record for support; (2) presented "patently false" allegations; and (3) misstated the record. *Jacques' Resp. Br. (ECF No. 55) at 5-6*. Jacques includes in his response brief a summary of "a few of the more relevant

and egregious examples of Haas's misstatements of the record . . . ." *Id. at 6-14.*

Second, Jacques argues that Haas disregarded the Federal Rules of Civil Procedure and the Court's Local Rules. *Id. at 14-15.* He argues that "Haas filed a Statement of Undisputed Facts, but . . . never cites that SUF in its brief, and the 'facts' it sets forth in that Statement are not the same ones it sets forth in its brief." *Id. at 15.* And, Jacques argues, Haas provided no citation to many of the "facts" Haas set forth in its brief. *Id.*

Third, Jacques argues that genuine issues of material fact exist respecting whether Haas paid him all commissions to which he was entitled. *Id. at 16-20.* He argues that: (1) Haas has not presented uncontested evidence supporting its argument that it paid Jacques all amounts owed; (2) Haas relies on a disputed fact – "that the date Haas signed the PHS contract fixed the date Jacques earned the commission[,]" – to support its assumption that it properly paid Jacques' commissions, when other evidence supports Jacques' argument that commissions were to be calculated and paid based on the date services were provided and invoiced; and (3) Haas incorrectly

assumes Montana law imposes a 55% penalty when it paid Jacques

commissions in August and September of 2014 when there exist factual

disputes respecting the amount of the penalty appropriate under

Montana law.  *Id.*  Thus, Jacques argues, the Court should deny Haas'

motion to the extent it relates to Counts I, II, and V of his Amended

Complaint.  *Id.*

Fourth, Jacques argues that genuine issues of material fact exist

concerning whether Haas wrongfully terminated his employment.  *Id.*

*at 21-24.*  He argues that there is evidence demonstrating that Haas

terminated Jacques' employment in retaliation for Jacques filing a

wage claim with the Montana Department of Labor, and there exists

conflicting evidence respecting Haas' bases for discharging Jacques.  *Id.*

Thus, Jacques argues, the Court should deny Haas' motion to the

extent it relates to Counts III and IV of his Amended Complaint.  *Id.*

Fifth, Jacques argues that sufficient evidence exists in this case to

allow a jury to determine whether Haas engaged in actual fraud or

actual malice in discharging Jacques for reporting a violation of public

policy.  *Id. at 24-25.*  Thus, he argues, the Court should deny Haas'

motion to the extent it seeks summary judgment respecting Jacques'

claim for punitive damages stemming from his wrongful discharge claims.  *Id*.

## III.  <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV. Discussion

### A. Counts I, II & V: Jacques' Wage-Based Claims

Montana's Wages and Wage Protection Act, MCA § 39-3-201, *et seq.*, requires that an employer pay its employees "the wages earned by the employee . . . ." MCA § 39-3-204(1). The Montana Supreme Court has determined that the statute "is sufficiently broad to cover employees who are paid on a commission basis." *America's Best Contractors, Inc. v. Singh*, 321 P.2d 95, 100 (Mont. 2014) (*citing Delaware v. K-Decorators, Inc.*, 973 P.2d 818, ¶ 32 (Mont. 1999)). "[A]n employer who fails to pay an employee his or her earned commissions in accordance with the Wage Protection Act is subject to a penalty

under § 39-3-206(1), MCA, based on the amount of wages that are due and unpaid." *Id.* (*citing Delaware*, at ¶ 32).

In *America's Best Contractors*, the supreme court set forth the respective burdens of proof for a claim under the Wage Protection Act as follows:

> An employee seeking unpaid wages has the initial burden of proving that he has performed work for which he was improperly compensated. To meet this burden, the employee must produce sufficient evidence showing the amount and extent of such work as a matter of just and reasonable inference. Once an employee has shown as a matter of just and reasonable inference that wages have been earned but not paid, the burden shifts to the employer to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference drawn from the evidence of the employee. If the employer fails to produce such evidence, the employee is entitled to judgment in his or her favor, even though the amount is only a reasonable approximation.

*Id.* at 101 (citations omitted).

Having considered the foregoing authority and the record, the Court concludes that genuine issues of material fact preclude summary judgment in Haas' favor on Jacques' wage-based claims.[6]

---

[6]Because Haas grouped these claims together and made no separate argument with respect to each of them, the Court does likewise.

By way of one example, Haas argues that it paid Jacques all commissions to which he was entitled. *ECF No. 46 at 6-9.* Haas argues that the date it signed the PHS contract fixed the date Jacques earned the commission, and that because Haas signed the contract in 2014, Jacques was not entitled to the commission he seeks. *Id.* But Haas has offered no authority or undisputed evidence to support its position.

On the other hand, in his response to Haas' motion, Jacques references evidence of record, which Haas admits is true, that: (1) the Haas-PHS contract had an effective date of December 1, 2013, *ECF No. 64-4 at 9*; (2) Haas invoiced PHS in 2013; and (3) Haas booked revenue from the contract in 2013. *ECF No. 46 at 7-8; ECF No. 55 at 16-17; ECF No. 56 at 7-9.* Although Haas maintains that this evidence is not relevant to the issue of when Jacques earned the commission, the Court disagrees. Haas has offered no authority for its position that the date the contract was signed fixed the date on which Jacques would qualify for a commission. And, a reasonable inference may be drawn from the evidence that Jacques has presented that Jacques earned commission on that contract in 2013.

Also, Jacques claims that he is entitled to commissions on other

sales that occurred after his employment with Haas ended. Although Haas disputes that claim, Jacques has pointed to some evidence in the record from which an inference reasonably may be drawn that he may be entitled to commissions for other sales in which he participated, regardless of when his participation occurred. *ECF No. 56 at 2-3.*

These and other genuine issues of fact preclude summary judgment on Jacques' wage-based claims, and Haas' motion on these claims (Counts I, II, and V) should be denied.

## B.  Counts III & IV:  Jacques' Wrongful Discharge Claims

An employee bears the burden of proving wrongful discharge. *Delaware v. K-Decorators, Inc.*, 973 P.2d 818, 829 (Mont. 1999) (citations omitted); *Schwartz v. Metro Aviation, Inc.*, 2009 WL 352599, at *4 (D. Mont. 2009) (citing *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, ¶ 24 (Mont. 2008)).  Montana's WDEA, MCA §§ 39-2-901, *et seq.*, provides, in relevant part, that a discharge is wrongful only if:

    (a)    it was in retaliation for the employee's . . . reporting a violation of public policy; [or]

    (b)    the discharge was not for good cause . . . .

MCA § 39-2-904(1).

As noted, Haas seeks summary judgment arguing both that it did

not discharge Jacques for reporting a violation of public policy and that it had good cause to discharge him. *ECF No. 46 at 9-11; ECF No. 62 at 8-13.* Jacques, on the other hand, argues that summary judgment is not appropriate because genuine issues of material fact exist respecting both claims. *ECF No. 55 at 21-24.*

> **1.** **Count IV:  Jacques' Claim that Haas Wrongfully Discharged Him in Retaliation for Reporting a Public Policy Violation**

"The WDEA's retaliatory discharge provision, § 39-2-904(1)(a), MCA, ... exists to protect the State's interest in enforcing State policies 'concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule.'" *Fenno v. Mountain West Bank*, 192 P.3d 224, 230 (Mont. 2008)  (quoting MCA §39-2-903(7)) (reversing district court's entry of summary judgment for employer).  "[T]he WDEA protect[s] employees who take steps in their employment to promote the enforcement of laws and regulations." *Id.* The WDEA protects a "good faith 'whistle blower[,]' ... regardless of whether the employee's report actually results in a citation or investigation [ – ] the test is whether the employee made the report in good faith." *Motarie v. Northern Montana Joint Refuse Disposal*

*District*, 907 P.2d 154, 157 (Mont. 1995) (reversing district court's entry of summary judgment for employer).

Having considered the foregoing authority and the record, the Court concludes that genuine issues of material fact preclude summary judgment on Jacques' WDEA retaliation claim. On the current record, it is undisputed that Jacques filed a wage claim with the State of Montana Department of Labor and Industry, and that it was served on Haas in February 2014. *ECF No. 7 at ¶ 17.* Although the parties stipulate that Haas gave Jacques a performance evaluation in February 2014, other evidence indicates Haas gave a written evaluation to Jacques in March 2014. *Id. at ¶ 18; see also ECF No. 47-8 at 1.* Either way, it is clear that Haas issued the performance evaluation a short time after Jacques filed his wage claim. And, it cannot reasonably be disputed that it is a negative performance evaluation. *ECF No. 47-8 at 2-5.* Haas ultimately paid Jacques some of the commissions that he claimed he was owed, but Haas denied liability for Jacques' wage claim. *See id. at ¶ 19; ECF No. 47-10 at 1; ECF No. 47-12 at 1.* On August 28, 2014, Haas terminated Jacques' employment. *ECF No. 7 at ¶ 20.*

In arguing that it did not terminate Jacques' employment because

of his wage claim, Haas has presented the declaration of Jacques'

supervisor who terminated him, Matthew Young.  *Young Decl. (ECF

No. 47-15) at ¶ 5*.  Young declares that he knew Jacques had filed a

wage claim, but his "decision to terminate Mr. Jacques was in no way

motivated by a desire to retaliate against [him] for having filed a wage

claim."  *Id*.  He further states that he was not involved in the wage

claim matter and did not consider it when he supervised Jacques.  *Id*.

But from the timing of Jacques' termination from employment,

which occurred within a few weeks of the time the parties were

negotiating Jacques' wage claim, a reasonable inference may be drawn

that Jacques' termination from employment may have been the result

of his wage claim against Haas.  Jacques testified in his deposition that

when he told a previous supervisor, Declan Grant ("Grant"), the

amount he was claiming in commissions for the period at issue and

which became the subject of his wage claim, Grant responded by saying

"that is never going to happen."  *Jacques' Depo. (ECF No. 56-43) at 16*.

And Young testified in his deposition that he spoke with Grant and had

Haas' human resources ("HR") personnel "clear" his decision to

terminate Jacques' employment before terminating Jacques.  *Young*

*Depo. (ECF No. 56-45) at 18-19.*

From this evidence, an inference may be drawn that the decision to terminate Jacques' employment with Haas may not have been solely Young's decision, and that his termination may have been the result of his wage claim filed against Haas. Drawing all reasonable inferences in Jacques' favor as the non-moving party, as it must, the Court cannot conclude on the current record that Haas' decision to terminate Jacques' employment was not in retaliation for filing a wage claim. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.*, 907 P.2d 154, 156-57 (Mont. 1995). Fact issues surrounding this claim must be resolved by a jury. Summary judgment, therefore, is not appropriate.

### 2. Count III: Jacques' Claim that Haas Wrongfully Discharged Him Because It Lacked Good Cause

The WDEA defines "good cause" as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." MCA § 39-2-903(5). A legitimate business reason is one that is "neither false, whimsical, arbitrary or capricious, and . . . must have some logical relationship to the needs of the business." *Baumgart v. State of Montana*, 332 P.3d 225, 231 (Mont. 2014) (*quoting*

*Sullivan v. Continental Const. of Montana, LLC*, 299 P.3d 832, 835

(Mont. 2013)).  To defeat a motion for summary judgment, the employee

may either prove that the given reason for the discharge is not "good

cause" in and of itself, or that the given reason "is a pretext and not the

honest reason for the discharge."  *Becker v. Rosebud Operating Services,*

*Inc.*, 191 P.3d 435, 441 (Mont. 2008) (*quoting  Johnson v. Costco*

*Wholesale*, 152 P.3d 727, 734 (Mont. 2007)).

In considering whether good cause exists for a discharge, courts

strive to balance an employer's right to exercise discretion over who it

will employ and keep employed with an employee's legitimate interest

in maintaining secure employment.  *Buck v. Billings Montana*

*Chevrolet, Inc.*, 811 P.2d 537, 540 (Mont. 1991).  "The balance should

favor an employee who presents evidence, and not mere speculation or

denial, upon which a jury could determine that the reasons given for

his termination were false, arbitrary or capricious, and unrelated to the

needs of the business."  *Johnson v. Costco Wholesale*, 152 P.3d 727, 733

(Mont. 2007) (*quoting Kestell v. Heritage Health Care Corp.*, 858 P.2d 3,

8 (Mont. 1993)).

The Court concludes that genuine issues of material fact preclude

summary judgment in Haas' favor on this claim.  As noted above, Haas has argued and presented some evidence that: (1) Jacques failed to follow instructions from his final three supervisors to focus his full time and attention to sales to new customers; (2) Jacques' performance fell below objectives and was deteriorating during 2013 and 2014, including his failure to meet revenue, contribution, and new customer sales targets; and (3) Jacques failed to cooperate in efforts to improve sales or to improve his attitude.  *ECF No. 46 at 10-11*.

In contrast, however, Jacques has presented evidence sufficient to raise genuine issues of material fact respecting whether Haas had good cause to discharge him.  For example, Jacques notes that Young testified in his deposition that Jacques' attitude was tied to his complaints about not receiving commissions to which he claimed entitlement.  *ECF No. 55 at 23 (citing ECF No. 56-45 at 18)*.  He notes that Young testified that he had no reason to think that Jacques would not have been a good team player if he had been paid and his complaint satisfied.  *Id*.

Also, respecting Haas' position that Jacques failed to heed instructions from his supervisors to focus completely on sales to new

customers, Jacques has presented some evidence that such instructions were impossible to follow and were not in Haas' best interest. Jacques testified that Haas did not assign anyone else to perform the customer service and support functions he was told to no longer perform, so he had to perform them to fulfill Haas' obligations to its existing customers. *ECF No. 56-43 at 2-4.*

It is, of course, for a jury to determine what weight to give Jacques' position on these issues, as reflected in the information contained in his deposition, against Haas' evidence submitted in the depositions and declarations of its witnesses. *See Weber v. Delta Dental Ins. Co.*, 882 F.Supp.2d 1195, 1198-1200 (D. Mont. 2012). If the jury were to give sufficient weight to Jacques' evidence, it could determine that the reasons Haas has given for Jacques' discharge were false, whimsical, arbitrary or capricious, and unrelated to the needs of Haas' business. *Johnson*, 152 P.3d at 733 (*quoting Kestell*, 858 P.2d at 8); *see also Baumgart*, 332 P.3d at 231. And jurors also must determine whether, from the totality of the evidence presented, Haas' reasons for discharging Jacques were pretextual and not the honest reason for his discharge. This conclusion, coupled with the above conclusion

respecting Jacques' claim that his discharge was in retaliation for reporting a public policy violation via his wage claim, create fact issues regarding "good cause" that a jury must resolve. Thus, summary judgment on Jacques' claim that his discharge was without good cause should be denied.

### 3.    Jacques' Claim for Punitive Damages

To prevail on a claim for punitive damages in an action under the WDEA, an employee must "establish[ ] by clear and convincing evidence that the employer engaged in actual fraud or actual malice in the discharge of the employee in violation of § 39-2-904(1)(a)." MCA § 39-2-905(2). As noted, a violation of MCA § 39-2-904(1)(a) requires that the wrongful discharge was "in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy."

An employer acts with actual malice if it "has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff." MCA § 27-1-221(2). An employer acts with

actual fraud if it: "(a) makes a representation with knowledge of its falsity; or (b) conceals a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury." MCA § 27-1-221(3).

Here, Jacques' claim for punitive damages for violation of the WDEA is based on his claim for unpaid commissions brought under Montana's Wages and Wage Protection Act, MCA § 39-3-201, *et seq.* In Montana, an employee's discharge for refusal to violate public policy by asserting the statutory right to wages can form the basis for punitive damages under the WDEA. *See Harrell v. Farmers Educational Co-op Union of America, Montana Div.*, 314 P.3d 920, 938-39 (Mont. 2013). Because, as noted above, genuine issues of material fact preclude summary judgment respecting Jacques' WDEA claim based on retaliation, the Court also concludes that fact issues preclude summary judgment on his claim for punitive damages related to that claim. Thus, summary judgment should be denied.

## V.    Conclusion

Based on the foregoing, IT IS RECOMMENDED that Haas' motion for summary judgment (*ECF No. 45*) be DENIED in all respects,

and that the Court set this matter for trial.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 25th day of January, 2016.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge